IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DEBORAH VILLOCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-cv-176 (TSE/LRV) |
| | ) |
| ALEJANDRO MAYORKAS, Secretary of the | ) |
| United States Department of Homeland | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and E.D. Va. Local Civil Rule 7, Defendant, Alejandro Mayorkas, in his official capacity as Secretary of the U.S. Department of Homeland Security ("DHS"), respectfully submits the following memorandum of law in support of his Motion to Dismiss the Amended Complaint in the above-captioned action.[1]

## INTRODUCTION

Plaintiff Deborah Villoch, an employee of the National Risk Management Center of the Cybersecurity and Infrastructure Security Agency ("CISA"), which is a sub-agency of DHS, generally alleges a series of purportedly adverse actions that were undertaken by her "supervisor of record" during a short detail to the Security Programs Division of CISA in 2021 and in the months after the detail ended. Merely from the fact that these actions allegedly occurred, Plaintiff

---

[1] Defendant files this motion out of an abundance of caution as Plaintiff failed to follow the Court's order to file the proposed Amended Complaint (*see* Dkt. No. 15-1) by August 16, 2023 (Dkt. No. 18). Accordingly, the original Complaint is technically still Plaintiff's operative pleading and there is already a pending motion to dismiss directed at that pleading. In the event that the Court eventually deems the proposed Amended Complaint filed nunc pro tunc to August 16, 2023, Defendant moves for dismissal of that pleading as well for the reasons stated herein.

avers that they were necessarily in retaliation for her having settled a prior employment discrimination case against the CISA, and thus claims that these actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (2018) ("Title VII").  The vast majority of her retaliation claims fail to plead a "materially adverse" action, and, even if all the retaliation claims did not have this deficiency, she still fails to allege a plausible nexus between her settlement of an earlier discrimination case (and the negotiations thereto) and the employment actions.  Accordingly, the Court should dismiss the Title VII retaliation claims.

## BACKGROUND

### A.    Factual Background

The following allegations are derived from the Amended Complaint and assumed to be true solely for the purposes of this motion.  *E.g.*, *Strickland v. United States*, 32 F.4th 311, 347 (4th Cir. 2022).

#### 1.    Asserted protected activity

At the time of the events alleged in the instant case, Plaintiff was a General Schedule ("GS") 14 Management and Program Analyst/Professional Development and Training Administrator in the National Risk Management Center of the CISA, in Arlington, Virginia.  Am. Compl. ¶¶ 8–9, 29.  On or about July 18, 2021, Plaintiff entered into a Settlement Agreement with DHS that included a 120-day, renewable detail assignment to the Security Programs Division, which is within the Office of the Chief Security Officer, to resolve a prior Equal Employment Opportunity ("EEO") complaint that she filed.[2]  *Id.* ¶¶ 10–13.  The signatories to the detail

---

[2]  As an aside, Plaintiff notes that the Settlement Agreement resolved an EEO case that was assigned case no. HQ-00238-2018. Am. Compl. ¶ 10.  This EEO case was the focus of an earlier federal lawsuit brought by Plaintiff in 2020, which was eventually dismissed in July 2021.  *See Villoch v. Mayorkas*, No. 1:20-cv-541-LO-TCB (E.D. Va. May 12, 2020), ECF No. 1; Dismissal Order, *Villoch v. Mayorkas*, No. 1:20-cv-541-LO-TCB (E.D. Va. Aug. 6, 2021), ECF No. 30.

agreement were Joseph Cassone, who would serve as her first-line supervisor during the detail; Tarek Abboushi; and Elizabeth Cozey. *Id.* ¶¶ 11–12, 14. Plaintiff's second-line supervisor at all relevant times was Babatope Dada. *Id.* ¶ 25.

Notwithstanding this supervisory chain, Plaintiff's "supervisor of record" during the detail was Stanley Greene. *Id.* ¶ 14. "Mr. Greene had signing authority for [Plaintiff's] timesheet." *Id.* ¶ 17. "*Upon information and belief*, in or around early June 2021, and concluding on or about July 18, 2021, Mr. Greene was consulted during the negotiations of the Settlement Agreement and was involved in determining the parameters of Ms. Villoch's detail." *Id.* ¶ 15 (emphasis added); *see also id.* ¶ 55.

### 2. Alleged retaliatory conduct

After beginning the detail, on or about September 10, 2021, Plaintiff drafted a timecard to change her alternative work schedule day. *Id.* ¶ 21. Mr. Greene questioned Plaintiff about that change and also informed Mr. Cassone that Mr. Greene did not authorize the change. *Id.* ¶¶ 22–23. Also in mid-September 2021, Plaintiff applied for a GS-15 Chief of Staff position at the Alcohol, Tobacco and Firearms Division ("ATF")[3] of the Department of Justice. *Id.* ¶ 25. "The position required *a supervisor's* recommendation." *Id.* (emphasis added). So, to bolster her application, Plaintiff requested a recommendation from Mr. Dada. *Id.* But when Mr. Greene "became aware that [Plaintiff] had sought one from [Mr. Dada]," Plaintiff requested a recommendation from Mr. Greene. *Id.* But Mr. Greene declined the request on or about September 27, 2021. *Id.* ¶¶ 27–28. That same month, Plaintiff advanced to the "second round of interviews" for the ATF position, but, at some unspecified point in time, Plaintiff learned that "she was not selected for the position," purportedly because Mr. Greene did not provide the requested

---

[3] The formal name is the Bureau of Alcohol, Tobacco, Firearms and Explosives.

recommendation. *Id.* ¶ 28. Towards the end of September 2021, Mr. Greene also allegedly and wrongfully told Mr. Cassone that Plaintiff impermissibly attended a supervisory training. *Id.* ¶ 26.

On or about October 4, 2021, Mr. Greene "questioned [Plaintiff] about her time and attendance." *Id.* ¶ 30. Later that month, on or about October 18, 2021, Mr. Greene issued Plaintiff "a Performance Evaluation and rated her as 'Meets Expectations' . . . ." *Id.* ¶ 31. And a week later, Mr. Greene issued a proposed suspension for Plaintiff on the ground of insubordination. *Id.* ¶ 33. Ultimately, nothing came of this proposal, as the Deciding Official opted for a one-day suspension that was "rescinded" and "removed from her personnel record" when Plaintiff grieved the suspension. *Id.* ¶¶ 43–46.

In November 2021, Mr. Cassone decided not to renew Plaintiff's detail. *Id.* ¶ 35. "Upon information and belief, Mr. Greene's persistent depictions of [Plaintiff] as a deceitful employee persuaded Mr. Cassone not to renew [Plaintiff's] detail." *Id.* ¶ 37. This was consistent with Mr. Greene's conduct towards Plaintiff in *2019,* as Mr. Greene had then also "refused to allow [Plaintiff] to go on a detail assignment"—long *before* Plaintiff entered the Settlement Agreement with CISA. *Id.* ¶ 38.

Plaintiff had additional unpleasant interactions with Mr. Greene after her detail concluded. *See id.* ¶ 40. For example, Mr. Greene sent her approximately ten or more "unwelcome emails," over an unspecified period, including one to Plaintiff's personal email account on December 20, 2021. *Id.* Mr. Greene also rejected Plaintiff's timecard submissions in March 2022. *Id.* ¶¶ 41–42.

**B.     Procedural Background**

Plaintiff commenced the instant Title VII retaliation case on February 7, 2023. Compl. (Dkt. No. 1) at 8. Defendant moved for dismissal of the case under Fed. R. Civ. P. 12(b)(6) on

July 17, 2023. *See, e.g.*, Mot. to Dismiss (Dkt. No. 9). Plaintiff then sought, with Defendant's consent, leave to file an amended pleading (which was attached to the leave request) on August 14, 2023. *See* Consent Mot. to File Am. Compl. (Dkt. No. 15) at 1. The Court ordered Plaintiff to file the Amended Complaint by August 16, 2023, and Defendant to respond thereto by September 1, 2023. *See* Order Granting Extension (Dkt. No. 19); Order Granting Leave (Dkt. No. 18). Plaintiff has yet to file the Amended Complaint. Defendant now moves to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6), if it ever becomes the operative complaint in this case.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept as true all well-pleaded allegations in adjudicating such a motion, but it need not credit allegations that are merely conclusory. *See Iqbal*, 556 U.S. at 678-80. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true . . . ." (footnote and citations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Although the court is required to adjudge the factual assertions contained within a complaint against the substantive law governing the claim, "where the well-pleaded *facts* do not permit the court to infer more than the *mere possibility* of misconduct," the complaint fails. *Id.* at 679

(emphasis added). This standard is equally applicable to claims of employment discrimination brought pursuant to Title VII. *See McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 588 (4th Cir. 2015); *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190–91 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).

## ARGUMENT

Although a plaintiff does not need to plead a prima facie case of retaliation to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must still "allege[] facts that plausibly state a violation of Title VII 'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman*, 626 F.3d at 190) (citing *McCleary-Evans*, 780 F.3d at 585–86; *Barbour v. Garland*, 2022 WL 3053765, at *3 (E.D. Va. June 29, 2022) (Ellis, J.) (same). So, to state a plausible claim of retaliation, the plaintiff must allege facts that directly or indirectly show her: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190 (citation omitted). The retaliation claims here are implausible because they lack a legally cognizable employment action and/or they lack a causal connection to the asserted protected activity, which is the July 2021 Settlement Agreement, including the negotiations thereof that began in early June 2021.

### A. With Two Possible Exceptions, None of Plaintiff's Employment Actions are "Materially Adverse" as Required to Sustain a Retaliation Claim.

An adverse employment action for a retaliation claim is one that is "materially adverse," which is to say that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" under Title VII. *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212–16 (4th Cir. 2022) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). This material adversity standard "separate[s] significant from trivial harms" so as *not* to convert

6

Title VII into a "general civility code for the American workplace." *Burlington*, 548 U.S. at 68 (citation omitted) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Significant harms "produce[] an injury." *Id.* at 67. Trivial harms normally include "petty slights, minor annoyances, and simple lack of good manners" that can "often take place at work and that all employees experience." *Id.* at 68 (citations omitted).

Assuming without conceding that Mr. Greene's alleged refusal to provide a recommendation in support of Plaintiff's application for the ATF position at the Department of Justice in September 2021 and that Mr. Cassone's non-renewal of her detail in November 2021 are materially adverse, no other alleged conduct crosses the material adversity threshold. According to Plaintiff, her allegations related to her training, timecard, and scheduling are tantamount to a complaint that Mr. Greene seemingly "scrutiniz[ed] everything that she did" once she started her 120-day detail, "whether it was training, completing her timecard, or requesting a schedule change." Am. Compl. ¶ 53. But the Fourth Circuit, as well as sister courts in the Circuit, have repeatedly held that increased or heightened scrutiny of employees by employers is not a materially adverse action. *See, e.g.*, *Belton v. City of Charlotte*, 175 F. App'x 641, 658 (4th Cir. 2006) ("close scrutiny" at work could not sustain retaliation claim); *Tankesley v. Vidal*, 2023 WL 4273763, at *24 (E.D. Va. June 29, 2023) (Ellis, J.) (holding that "increased scrutiny in the form of required status reports and one-on-one meetings do not meet the materially adverse standard"); *Campbell v. Enter. Holdings, Inc.*, 2013 WL 5216735, at *7 n.3 (E.D.N.C. Sept. 16, 2013) (retaliation claim predicated on "increased supervision" fails); *Auriemma v. Logan's Roadhouse, Inc.*, 2012 WL 5844967, at *4 (W.D. Va. Nov. 19, 2012) (allegations of "heightened oversight and scrutiny" were insufficient for retaliation claim); *Chika v. Plan. Rsch. Corp.*, 179 F. Supp. 2d 575, 587 (D. Md. 2002) (that plaintiff was "closely monitored and . . . repeatedly questioned about his

work" did not support a retaliation claim); *see also Livingston v. Datex-Ohmeda, Inc.*, 2008 WL 7289608, at *3 (D. Md. May 7, 2008) ("[The plaintiff's] complaints that she was singled out and strictly monitored and that her time sheets were scrutinized, are, at most, 'petty slights, minor annoyances, and simple lack of good manners,' that cannot be classified as materially adverse employment actions." (quoting *Burlington*, 548 U.S. at 68)), *aff'd*, 316 F. App'x 233 (4th Cir. 2009); *Shannon v. Va. Dep't of Juvenile Just.*, 2007 WL 1071973, at *4 (E.D. Va. Apr. 4, 2007) (concluding that supervisor's acts of questioning employee's leave requests and monitoring employee's activities do not cross the "materially adverse" threshold).[4]

Plaintiff also characterizes the proposed suspension as an act of reprisal. Am. Compl. ¶ 53. But the suspension was rescinded through the Agency grievance process, and no record of it remains in Plaintiff's personnel file. *Id.* ¶ 46 ("[T]he decision to suspend [Plaintiff] was rescinded and all evidence of it removed from her personnel record."). The rescinded suspension cannot be deemed materially adverse. *See Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 755 (4th Cir. 1996) (no adverse employment action for retaliation claim where the plaintiff "received a formal

---

[4] *See also Watson v. Va. Dep't of Agric. & Consumer Servs.*, 2020 WL 1237012, at *4 n.6 (E.D. Va. Mar. 13, 2020) ("The harmful conduct—daily desk checks, a 'counseling memo' for turning in time sheets late, threats about the failure to return voicemail messages on time, and accusations of using too much 'flex time'—would not 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" (citations omitted) (quoting *Burlington*, 548 U.S. at 57)), *aff'd*, 2022 WL 4244506 (4th Cir. Sept. 15, 2022); *Jordan v. S.C. Dep't of Transp.*, 2019 WL 978853, at *1, 3–4 (D.S.C. Feb. 28, 2019) (allegations that the plaintiff was mistreated by having his time, attendance, and performance questioned in an accusatory manner and that his manager was attempting to "get rid of him" were akin to unactionable "petty slights or minor annoyances that often take place at work and that all employees experience"), *aff'd*, 797 F. App'x 101 (4th Cir. 2020); *Lindsey-Grobes v. United Airlines, Inc.*, 2014 WL 5298030, at *10 (D. Md. Oct. 14, 2014) ("monitoring" of "performance" and "breaks" is, "at most, 'petty slights, minor annoyances, and simple lack of good manners'" (quoting *Burlington*, 548 U.S. at 68)); *Simmington v. Gates*, 2010 WL 1346462, at *13 (D. Md. Mar. 30, 2010) ("questioning [the] [p]laintiff about her attendance . . . would not dissuade a reasonable worker from making or supporting a charge of discrimination" (citations omitted)).

disciplinary warning . . . but the warning was subsequently removed from his personnel record"), *abrogated on other grounds by Bostock v. Clayton Cnty.*, 590 U.S. _, 140 S. Ct. 1731 (2020); *Tankesley*, 2023 WL 4273763, at *26 (Ellis, J.) ("[C]ourts of appeals have similarly found that proposed discipline that ultimately are not imposed, such as the Notice of Proposed Suspension here, do not constitute a materially adverse action.").[5]

In sum, almost all of the alleged conduct is not actionable because it does not amount to a materially adverse action.[6]

### B. There is No Causal Link Between the July 2021 Settlement Agreement, Including the Negotiations That Led to It, and Any Materially Adverse Actions.

Even if all of the alleged conduct were materially adverse, there is still no plausible nexus

---

[5] *See also Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) ("[C]ourts have been unwilling to find [materially] adverse actions where the suspension is not actually served."); *Waters v. Md. Dep't of Transp., Motor Vehicle Admin.*, 2008 WL 11509373, at *4 (D. Md. Oct. 16, 2008) ("A reprimand or a proposed suspension that is never executed is not a materially adverse action that is likely to dissuade an employee from bringing a charge of discrimination." (citing cases)).

[6] The Amended Complaint alludes to an October 2021 performance evaluation in which Plaintiff received a "Meets Expectations" rating as well as various occasions when Plaintiff received "unwelcome emails" from Mr. Greene, but these discrete acts do not appear to form the basis of any retaliation claim. *Compare* Am. Compl. ¶ 31, *with id.* ¶ 53–54 (identifying adverse actions for retaliation claims). To the extent Plaintiff intended these acts to underlie a retaliation claim, such a claim would fail as well. Courts consistently hold that performance assessments indicating that an employee is at least meeting the expectations of the employer are not materially adverse. *See, e.g.*, *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 652 (4th Cir. 2002) (no retaliation claim based on a "Fully Acceptable" performance evaluation); *Perry v. Maryland*, 2019 WL 2177349, at *15 (D. Md. May 17, 2019) ("satisfactory" performance evaluations were not materially adverse); *Hill v. Panetta*, 2012 WL 12871178, at *15 (E.D. Va. Oct. 4, 2012) ("acceptable" performance appraisal does not meet materially adverse standard), *aff'd*, 561 F. App'x 264 (4th Cir. 2014).

And "unwelcome emails" (the contents of which have not been alleged) reflect the "petty slights, minor annoyances, and simple lack of good manners" that can "often take place at work and that all employees experience," and thus are not materially adverse. *Burlington*, 548 U.S. at 68.

between Plaintiff's protected activity and that conduct.

### 1. There are no allegations that plausibly suggest that Mr. Greene retaliated against Plaintiff.

As to causation, a plaintiff must at least plausibly plead that the decisionmaker who allegedly undertook any materially adverse action was aware of the protected activity. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). There must also ordinarily be "some degree of temporal proximity to suggest a causal connection." *Id.* at 501. Thus, "[a] lengthy time lapse between the [decisionmaker's] becoming aware of the protected activity and the alleged adverse action *negates* any inference that a causal connection exists between the two." *Id.* (emphasis added) (ellipses omitted) (quoting *Dowe*, 145 F.3d at 657).

Here, Plaintiff alleges no plausible causal chain between the protected activity and any possible materially adverse actions. Plaintiff blames Mr. Greene for retaliatory conduct. *See* Am. Compl. ¶¶ 53–54. But while doing so, Plaintiff only alleges that, "*upon information and belief*, in or around early June 2021, and concluding on or about July 18, 2021, Mr. Greene was consulted during the negotiations of the Settlement Agreement and was involved in determining the parameters of [Plaintiff's] detail." *Id.* ¶¶ 10, 15 (emphasis added). This allegation is conclusory and does not plausibly suggest that Mr. Greene was aware of the relevant protected activity. *See Harman v. Unisys Corp.*, 356 F. App'x 638, 640–41 (4th Cir. 2009) (conclusory allegations relying on "information and belief" cannot defeat motion to dismiss); *Sabouri-Yazdi v. Red Coats, Inc.*, 2018 WL 10677200, at *1 (E.D. Va. Jan. 17, 2018) ("[m]erely stating conclusions 'upon information and belief' without adding factual allegations that support such belief is insufficient to salvage" claims from dismissal (citation omitted)); *see also Marcus v. Dennis*, 2022 WL

1527524, at *11 (E.D. Va. May 13, 2022) (similar); *Williams v. AM Lapomarda*, 2020 WL 3643466, at *12 (E.D. Va. July 6, 2020) (similar).  Mr. Greene was *not* a signatory to the Settlement Agreement.  *See* Am. Compl. ¶ 11.  Although Mr. Greene was allegedly "involved in determining the parameters of Plaintiff's detail," it does not necessarily follow that he was aware that the detail was the product of an ongoing settlement negotiation between Plaintiff and the CISA to resolve an employment dispute.  *Id.* ¶ 15.  There are no non-conclusory allegations that anyone involved with negotiating the Settlement Agreement discussed those negotiations or the Agreement itself with Mr. Greene or that they would have had reason to do so.

Even if Plaintiff has plausibly alleged that Mr. Greene was aware of the negotiations leading to the Settlement Agreement "in or around early June 2021," *id.* ¶ 15; *see also id.* ¶ 55, there remains a temporal gap between this awareness and the alleged retaliatory conduct.  Such conduct did not allegedly start until early September 2021, i.e., *three months* after Mr. Greene purportedly became aware of Plaintiff's participation in protected activity.  *Id.* ¶ 21.  As a matter of law, no plausible inference of retaliation may be drawn when so much time has elapsed.  *See, e.g.*, *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (explaining that even a three-month gap can be too large to establish causation); *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (similar); *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (three to four months insufficient); *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (similar).

In addition to this temporal gap, Plaintiff's own allegations repeatedly undermine any inference that Mr. Greene harbored retaliatory animus.  For example, Plaintiff alleges that Mr. Greene had knowledge of Plaintiff's protected activity around early June 2021, but still allowed Plaintiff's detail to go forward in July 2021.  *See* Am. Compl. ¶¶ 12, 15.  That alleged conduct is

hardly consistent with retaliation, as Mr. Greene agreed to the detail that Plaintiff desired and obtained in the Settlement Agreement. *See Moticka v. Weck Closure Sys.*, 183 F. App'x 343, 353 (4th Cir. 2006) ("favorable treatment" following protected activity undercuts an inference of retaliatory motive); *see also Flynn v. Mid-Atl. Mari-Time Acad.*, 2019 WL 7859409, at *19 & n.32 (E.D. Va. July 30, 2019) (same), *adopted*, 2020 WL 247488 (E.D. Va. Jan. 16, 2020).

Plaintiff additionally alleges that Mr. Greene's failure to recommend her for an extension of her detail was "not surprising given that Mr. Greene had *previously* refused to allow [Plaintiff] to go on a detail assignment for Mr. Cassone in *2019*." Am. Compl. ¶ 38 (emphasis added). Thus, according to Plaintiff, Mr. Greene had a negative attitude about a detail for Plaintiff both *before and after* any asserted protected activity, which negates any inference of retaliatory animus. *See, e.g., Feldman v. L. Enf't Assocs. Corp.*, 752 F.3d 339, 349 (4th Cir. 2014) (no retaliation where the protected activity did not "change[] the bitter status quo" between the plaintiff and responsible management officials); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." (quotation marks and citations omitted)); *see also Bullock v. Kendall*, 2022 WL 2828221, at *2 (4th Cir. July 20, 2022); *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021). For these reasons, Plaintiff has failed to plausibly allege any causal link between her protected activity and any materially adverse action.

**2. The retaliation claims related to the non-selection for the ATF Position and the non-renewal of the detail suffer additional infirmities.**

Several more flaws undermine two retaliation claims in particular: (1) that Mr. Greene retaliated against Plaintiff by not providing a recommendation in support of her application for the ATF position at the Department of Justice; and (2) that Mr. Cassone did not renew her 120-day

12

detail in November 2021 because Mr. Greene somehow portrayed her as deceitful. Am. Compl. ¶¶ 53–54. For both of these claims, the formal (relevant) decisionmakers for these (assumed) materially adverse actions were *not* Mr. Greene—they were (unnamed) decisionmakers at ATF (or the Department of Justice) and Mr. Cassone, respectively. But neither the non-CISA decisionmakers nor Mr. Cassone is alleged to have been aware of Plaintiff's protected activity, so no retaliation claims may lie against them.[7] *Dowe*, 145 F.3d at 657 ("[B]y definition, an employer cannot take action because of a factor of which it is unaware, [so] the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish . . . [causation]" (citing cases)).

Notwithstanding that Plaintiff is not proceeding pro se, and affording her a liberal construction of the Amended Complaint, Defendant presumes that Plaintiff is attempting to advance a "cat's paw" theory of liability for these specific actions, which she has failed to plausibly plead. *See, e.g.*, *Barnhill v. Garland*, 2022 WL 18585322, at *8 n.7 (E.D. Va. Oct. 19, 2022) (noting that, on a motion to dismiss, a plaintiff has to "plausibly plead facts that would support a 'cat's paw theory of liability'" (citing *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 602 (D. Md. 2018))). Under this theory, there is liability for retaliation if the retaliatory animus of an employee can be imputed to the formal decisionmaker for the materially adverse action. *See generally Smyth-Riding v. Scis. & Eng'g Servs., LLC*, 699 F. App'x 146, 154–56 (4th Cir. 2017) (explaining cat's paw theory). But the Fourth Circuit has cabined the reach of the cat's paw. An employee's animus cannot be imputed to the formal decisionmaker "simply because he had a substantial influence on the ultimate [adverse employment] decision or because he has played a role, even a significant one, in the adverse employment decision." *Hill v. Lockheed Martin Logistics Mgmt.*,

---

[7] Nor does Plaintiff allege that these decisionmakers harbored any retaliatory animus toward her.

13

*Inc.*, 354 F.3d 277, 291 (4th Cir. 2004) (en banc), *overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *see also Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726, 739 (4th Cir. 2022). The employee harboring retaliatory animus must have had authority over the employment action. *See Roberts*, 45 F.4th at 739 ("Even though the record shows that [the employee] had supervisory and some disciplinary authority, there's no evidence he had any role in [the adverse employment action].").

There are no allegations here that Mr. Greene had any authority in whether to renew Plaintiff's detail or whether to hire her for the ATF position in a *different* agency. At most, Plaintiff speculates that Mr. Greene had some measure of influence on these decisions, *see id.* ¶¶ 28, 37–38, 54, which is insufficient to invoke the cat's paw theory, *Roberts*, 45 F.4th at 739; *Hill*, 354 F.3d at 291.

Specifically, that Mr. Greene had even a substantial impact on Plaintiff's rejection from the ATF position is belied by her own allegations. Plaintiff alleges that the position "required *a supervisor's* recommendation," not one specifically from Mr. Greene. Am. Compl. ¶ 25 (emphasis added). In fact, Plaintiff first turned to her second-level supervisor, Mr. Dada, for a recommendation before requesting one from Mr. Greene. *Id.* And although Mr. Greene allegedly declined to issue Plaintiff a recommendation that was purportedly "required" for the ATF position, *id.* ¶ 25, Plaintiff still made the "second round of interviews" for that position, *id.* ¶ 28. Had the position required a recommendation from Mr. Greene specifically, logic suggests that Plaintiff would not have advanced to the second round of interviews.

In sum, many of the retaliation claims lack a predicate "materially adverse" action, as the alleged conduct is nothing more than an amalgamation of ordinary workplace tribulations that would not dissuade reasonable employees from engaging in protected activity. In any event, there

14

are no allegations rendering any causal link between the protected activity and any materially adverse actions plausible.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests dismissal of the case.

Dated: September 1, 2023

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:       /s/
HUGHAM CHAN
KIRSTIN K. O'CONNOR
Assistant United States Attorneys
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3743/3799
Fax:   (703) 299-3983
Email:  Hugham.Chan@usdoj.gov
             Kirstin.O'Connor@usdoj.gov

*Counsel for Defendant*