IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| **DEBORAH VILLOCH** | ) |
| Plaintiff, | ) |
| v. | ) |
|  | ) Civil Action No.: **1:23-cv-00176** |
| **ALEJANDRO MAYORKAS, SECRETARY** | ) |
| **U.S. DEPT. OF HOMELAND SECURITY** | ) |
| Defendant. | ) |

## AMENDED COMPLAINT

Plaintiff, Deborah Villoch (herein "Ms. Villoch" or "Plaintiff Villoch"), by and through undersigned counsel, pursuant to Rule 15 of the Federal Rules of Civil Procedure, hereby files this Amended Complaint for damages against Alejandro Mayorkas, Secretary of the U.S. Department of Homeland Security (hereinafter "Agency" or "Defendant"), and states as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under federal law, i.e., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq.

2. Venue is appropriate in this Court under 28 U.S.C. 1391(e) because the Defendant is an employee of DHS acting in his official capacity, and all the adverse actions giving rise to the Plaintiff's claims occurred in the Eastern District of Virginia. Venue is also proper in the Eastern District of Virginia because the Plaintiff resides in the said district and no real property is involved in the action.

## PARTIES

3. Plaintiff, Deborah Villoch, is an individual citizen and resident of Ashburn, Virginia. She is Puerto Rican and identifies herself as Hispanic/Latina.

4. Plaintiff, at all times relevant hereto, was an employee of Defendant and worked in Ashburn and Arlington, Virginia.

5. The Defendant, Alejandro Mayorkas, is the Secretary of DHS. He is being sued in his official capacity.

## ADMINISTRATIVE EXHAUSTION

6. Ms. Villoch timely filed a charge with the Equal Employment Opportunity Office of (Agency Case No. HS-CISA-00183-2022) for reprisal for engaging in protected activity.

7. Ms. Villoch received the Final Agency Decision and Right to File a Civil Action on November 10, 2022.

## RELEVANT BACKGROUND

8. On or about December 8, 2008, Ms. Villoch began her career with DHS as a Management and Program Analyst.

9. At all times relevant to the instant complaint, Ms. Villoch worked at Cybersecurity and Infrastructure Security Agency (herein "CISA") employed as a Management and Program Analyst/Professional Development and Training Administrator in the National Risk Management Center (NRMC), in Arlington, Virginia.

10. On or about July 18, 2021, Ms. Villoch entered into a Settlement Agreement with the Defendant regarding a prior EEOC complaint (Agency Case No. HQ-00238-2018), initiated on February 20, 2018.

11. As part of the Settlement Agreement, the parties agreed to a detail assignment at the Office of the Chief Security Officer (herein "OCSO") which was provided for and explained in a Memorandum of Agreement (herein "MOA") which was executed by Ms. Villoch, Joseph Cassone, Associate Chief, Security Programs Division (OCSO), Tarek Abboushi, Chief Human Capital Officer, and Elizabeth Cozey, Deputy Assistant Chief of Staff, Security Programs Division, on or about July 14, 2021.

12. On or about July 18, 2021, Ms. Villoch began working for Joseph Cassone, on a 120-day detail (herein "detail"), which was renewable for an additional 120 days. Specifically, the MOA provided as follows:

> "The length of this detail will be for a period of 120 days with an option to extend the detail for additional periods of up to 120 days through a written agreement executed by the OCSO, the NRMC, and Ms. Villoch."

13. Pursuant to the MOA, Mr. Cassone was the point of contact for the OCSO and Stanley Greene (herein "Mr. Greene"), Program Specialist, (formerly Chief of Administrative Services), was the point of contact for NRMC.

14. During the detail, Mr. Cassone was Ms. Villoch's day-to-day supervisor and Mr. Greene was her supervisor of record.

15. Upon information and belief, in or around early June 2021, and concluding on or about July 18, 2021, Mr. Greene was consulted during the negotiations of the Settlement Agreement and was involved in determining the parameters of Ms. Villoch's detail.

16. Ms. Villoch and Mr. Cassone had previously worked together, had developed a good working rapport and he had encouraged her to try and work with the Security Programs Division.

17. Mr. Greene had signing authority for Ms. Villoch's timesheet.

## **FACTS**

18. As noted, Ms. Villoch began her detail on or about July 18, 2021. She hit the ground running and immediately embraced her new position.

19. Mr. Cassone was pleased to have Ms. Villoch working for him as he had previously submitted an MOA to Mr. Greene, for a detail assignment for Ms. Villoch in November 2019, which he (Mr. Greene) had refused to approve.

20. At the onset of the detail, Mr. Cassone informed Ms. Villoch that he was not a micromanager and that if he had his preference, she would not return to NRMC but remain at OCSO.

21. On or about September 10, 2021, Ms. Villoch created a draft time on a PP-18 timecard to change the Alternative Work Schedule (herein "AWS") day.

22. Almost immediately, and just two months after Ms. Villoch engaged in protected activity (execution of Settlement Agreement), Mr. Greene, questioned Ms. Villoch, regarding "an unsubstantiated change to her work schedule".

23. Mr. Greene contacted Mr. Cassone to inquire as to the change and inform him that he had not authorized it.

24. Mr. Greene's actions cast a negative light on Ms. Villoch and gave the impression that Ms. Villoch was acting in a dishonest manner.

25. On or around mid-September 2021, Ms. Villoch applied for a Chief of Staff position at the Alcohol, Tobacco and Firearms Division of the Department of Justice, which was a GS-15 position. This position required a supervisor's recommendation. Initially, she did not request a recommendation from Mr. Greene as she knew he would withhold it in retaliation for her past protected activity. Nonetheless, Ms. Villoch requested a recommendation from Mr. Greene after

4

he became aware that she had sought one from her second-line supervisor Babatope Dada, Chief of Operations.

26. In or around September 29, 2021, Mr. Greene informed Mr. Cassone that Ms. Villoch was attending supervisory training (when she was not) without his permission during her detail at OCSO.  There was no reason to inform Mr. Cassone but Mr. Greene did so to cause Mr. Cassone to doubt Ms. Villoch and so that he would not request to renew her detail.

27. On or about September 27, 2021, Mr. Greene declined Ms. Villoch's request for a recommendation for a supervisory position.

28. During September 2021, Ms. Villoch had completed the second round of interviews for the Chief of Staff position.   However, when Mr. Greene would not provide a recommendation, she was not selected for the position.

29. Ms. Villoch was (is) a GS-14 and due to Mr. Greene's retaliatory behavior, she missed an opportunity for a promotion and career advancement when she was not selected for the Chief of Staff position.

30. On or about October 4, 2021, Mr. Greene questioned Ms. Villoch about her time and attendance, once again causing Ms. Villoch's actions to look deceitful or underhanded when she was not.

31. On or about Oct. 18, 2021, Mr. Greene issued Ms. Villoch her 2020/2021 Performance Evaluation and rated her as "Meets Expectations" which was not reflective of her actual performance.

32. Mr. Greene never consulted with or requested input from Mr. Cassone for Ms. Villoch's performance evaluation despite the fact that he was Ms. Villoch's day-to-day supervisor during the performance review period and despite language in the MOA that provided as follows:

"Any evaluative comments from OSCO will be considered in her official performance evaluations and performance plans under NRMC."

33. On October 25, 2021, Mr. Greene issued Ms. Villoch a Notice of Proposed Three-day Suspension (herein "PFS"), alleging that Ms. Villoch was insubordinate for attending a training.[1]

34. On or about November 11, 2021, Ms. Villoch submitted a response to the PFS, challenging Mr. Greene's allegations. Ms. Villoch's response included documentation supporting her arguments that the PFS was meritless and only done to retaliate against Ms. Villoch.

35. In or around November 2021, Mr. Cassone did not renew Ms. Villoch's detail. This was disappointing because Ms. Villoch could have advanced to a training manager position, which was something that she and Mr. Cassone had previously discussed.

36. Mr. Cassone's decision not to renew Ms. Villoch's detail was a complete turnabout from his intention when she first began her detail.

37. Upon information and belief, Mr. Greene's persistent depictions of Ms. Villoch as a deceitful employee persuaded Mr. Cassone not to renew Ms. Villoch's detail.

38. Upon information and belief, Mr. Greene as the point of contact for NRMC, and a party to the MOA, did not recommend the extension of Ms. Villoch's detail. This is not surprising given that Mr. Greene had previously refused to allow Ms. Villoch to go on a detail assignment for Mr. Cassone in 2019.

39. On or about December 7, 2021, Ms. Villoch went out on sick leave due to emergency surgery.

---

[1] Mr. Greene issued a Notice of Proposed Suspension on October 18, 2021, but rescinded it on the same day. He reissued it on October 25, 2021.

40. On or around ten or more occasions, Mr. Greene sent Ms. Villoch unwelcome emails, including an email to her personal email on December 20, 2021.

41. On or around March 16, 2022, Mr. Greene rejected Ms. Villoch's time and attendance submission and misled her to change her leave request to FMLA.

42. In or around March 30, 2022, Mr. Greene rejected Ms. Villoch's timecard submission and falsely insinuated that she had not completed it correctly.

43. On April 20, 2022, management issued a decision on the PFS and notified Ms. Villoch of a one-day suspension.

44. Shortly thereafter, on or about May 19, 2022, Ms. Villoch submitted an informal grievance regarding the decision to suspend her for a day. The suspension would result in no pay or benefits for a day and would become a permanent part of her personnel record.

45. On or about June 17, 2022, Ms. Villoch submitted her formal grievance to the one-day suspension decision.

46. On or about July 29, 2022, a decision to the grievance was issued wherein the decision to suspend Ms. Villoch was rescinded and all evidence of it removed from her personnel record.

47. Ms. Villoch suffered substantial financial losses opposing Mr. Greene's baseless proposal.[2]

48. From October 2021 through July 29, 2022, Ms. Villoch suffered extreme stress and anxiety, resulting in extreme stomach pains, elevated blood pressure, and elevated blood glucose levels.

---

[2] Mr. Greene's 3-day proposal for suspension was converted to a 1-day suspension which resulted in a cascade of issues for Ms. Villoch including the inability to attend external seminars, telework, or work with FEMA on surge teams. Ultimately, after expending significant financial resources, the 1-day suspension was rescinded and removed from Ms. Villoch's file. Still, however, the damage and harm had already occurred.

49. Ms. Villoch was hospitalized several times during the time relevant to this complaint for stress-induced illnesses.

50. Ms. Villoch sought medical attention for elevated blood pressure during the time relevant to this complaint.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

51. Plaintiff re-alleges Paragraphs 1-50 and incorporates them fully herein.

52. Ms. Villoch alleges that the Defendant and/or agents or employees acting on its behalf, subjected her to adverse treatment in retaliation for her opposition to the Defendant's unlawful discriminatory employment practices (engaging in protected activity) in violation of Title VII, 42 U.S.C. § 2000e-3(a)

53. The Defendant's acts of reprisal against Ms. Villoch began just two months after she engaged in protected activity and included, but was not limited to, scrutinizing everything that she did, whether it was training, completing her timecard, or requesting a schedule change. Defendant also issued a proposed three-day suspension and refused to provide her a recommendation for a GS-15 position causing her to not to be selected and suffer financial loss from lack of promotion and career advancement.

54. Mr. Greene's numerous and intentional actions to make Ms. Villoch appear untrustworthy and deceitful caused Mr. Cassone not to renew her detail.  As such, Ms. Villoch was thwarted from a potential training manager position and other career advancement.

55. Ms. Villoch's supervisor, Mr. Greene, who was responsible for the actions in Paragraph Nos. 53-54, had knowledge of Ms. Villoch's participation in EEO protected activity starting in or around June 2021.

56. As a direct and proximate result of the Defendant's retaliatory conduct and behavior, Ms. Villoch suffered and continues to suffer economic loss and damages.

57. As a consequence of the Defendant's actions, Ms. Villoch has suffered and is suffering considerable injury, including loss of present and future earnings, other benefits and physical and mental distress as herein alleged.

58. As a consequence of the Defendant's actions, the Defendant is liable to Ms. Villoch for damages as well as for attorney's fees, the costs of this litigation, and accrued interest.

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests this Court to:

A. Enter judgment for Plaintiff against Defendant on all Count(s).

B. Declare that the conduct of Defendant is in violation of Title VII, 42 U.S.C. §2000e-2(a)(1);

C. Award Plaintiff equitable relief, such as back pay and other economic losses (including the monetary equivalent of all sick leave used due to Defendant's unlawful actions and entitlements retroactive to the date of the unlawful action found to have occurred in this case;

D. Award Plaintiff compensatory damages for the injuries and losses that she suffered in an amount to be proved at trial;

E. Order Defendant to pay all reasonable attorneys' fees, court costs, and expenses incurred by Plaintiff as a result of Defendant's actions and inactions, as well as prejudgment and post-judgment interest; and

F. Order such other equitable and legal relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff requests a trial by a jury of their peers as to all claims set forth in this Amended Complaint.

Dated: August 14, 2023                              Respectfully submitted,

                                                    _____/s/_____
                                                    Rosanna Lopez, Esquire
                                                    Virginia State Bar No. 70547
                                                    Lopez & Wu, PLLC
                                                    1818 Library Street, Suite 500
                                                    Reston, Virginia 20190
                                                    Phone: 703-835-6145
                                                    Facsimile: 703-831-0181
                                                    Email: rlopez@lopezandwu.com
                                                    *Attorney for Plaintiff Deborah Villoch*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of August, 2023, I caused a true and correct copy of the foregoing Amended Complaint to be served electronically, via the CM-ECF system, to:

Hugham Chan
Assistant United States Attorneys
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3738/3743
Fax: (703) 299-3983
Email: Hugham.Chan@usdoj.gov
*Counsel for Defendant*

                         _____/s/_____

                         Rosanna Lopez, Esquire