**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **DEBORAH VILLOCH** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **Civil Action No.: 1:23-cv-00176** |
| **ALEJANDRO MAYORKAS, SECRETARY** | ) |
| **U.S. DEPT. OF HOMELAND SECURITY** | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW, Plaintiff Deborah Villoch (herein "Plaintiff" or "Ms. Villoch"), by and through counsel, and states as her opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint, with the following:

**INTRODUCTION**

Deborah Villoch brought this action after she experienced retaliation, based on previously alleged discrimination in a separate cause of action. Simply put, Ms. Villoch pled sufficient facts to establish a retaliation claim under Title VII of the Civil Rights Act of 1964.

**STANDARD OF REVIEW**

At the motion to dismiss stage, pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether sufficient facts have been pled in order to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007)). The Court need only look at the four corners of the complaint to determine sufficiency of the facts alleged, rather than "resolve contests surrounding the facts, merits of a

claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## ARGUMENT

A Title VII retaliation case requires a plaintiff to plead that (1) he engaged in a protected activity; (2) his employer took a materially adverse action against him (one that might have dissuaded a reasonable worker in his position from engaging in a protected activity); and (3) there is a causal connection between the materially adverse action and the protected activity. *Foster v. Univ. of Maryland-E. Shore,* 787 F.3d 243, 250 (4th Cir. 2015).

In its motion, Defendant only addressed elements (2) and (3). Therefore, Plaintiff Villoch accepts that Defendant does not contest that Ms. Villoch engaged in protected activity and will therefore only address elements (2) and (3).

### A. Mr. Greene's Numerous Retaliatory Actions Were Materially Adverse and Caused Ms. Villoch Significant Harm

The Supreme Court has made clear that the action complained of in a retaliation case must be materially adverse and represent "significant" as opposed to "trivial" harm. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). Accordingly, to be actionable, such harm must deter a reasonable person from reporting unlawful activity. *Id* at 68. It is unarguable that Mr. Greene's refusal to provide a recommendation for the Bureau of Alcohol, Tobacco, Firearms and Explosives, (herein "ATF") position at the Department of Justice in September 2021, clearly impacted the terms and conditions of Ms. Villoch's employment and would deter any reasonable person from reporting his/her actions. Without a recommendation from Mr. Greene, the chances of securing the position were highly unlikely. Moreover, Mr. Greene's efforts to taint Ms. Villoch's professional reputation before Mr. Cassone so that he (Mr. Cassone) would not renew her detail in November 2021, is most

certainly an action which caused Ms. Villoch significant harm.  Indeed, Mr. Greene's actions completely eliminated any chance Ms. Villoch had to establish herself and advance her career within Mr. Cassone's section.

Moreover, Mr. Greene's actions are more than just petty slights, minor annoyances, and a lack of good manners.  The scrutiny and the frequency of Mr. Greene's interference with Ms. Villoch's day-to-day activities when he was no longer Ms. Villoch's day-to-day supervisor solidified Ms. Villoch's fear that his reach and influence over her career advancement went far beyond what she could imagine.  Therefore, it is not a giant leap to conclude that any reasonable person would be deterred from engaging in protected activity if they could be retaliated against even when they were no longer under the retaliator's supervision.  Indeed, Mr. Greene's influence and control over Ms. Villoch followed her directly to her detail under Mr. Cassone's day-to-day supervision.  Thus, it is completely disingenuous to claim that Mr. Greene's constant monitoring of Ms. Villoch's timecard and her Alternative Work Schedule schedule (and schedule in general), proposing a suspension, and rating her as "meets expectations" were petty slights, mere annoyances or a simple lack of good manners.

Regarding Ms. Villoch's 2020/2021 Performance Evaluation, Defendant's reliance on *Thompson v. Potomac Elec. Power Co.*, 312 F. 3d 645, 652 (4th Cir. 2002) is misplaced because while the court held that a rating of "Fully Acceptable" is not materially adverse, it did so only because Plaintiff Thompson did not present any evidence that the appraisal affected the terms, conditions, or benefits of his employment.  In the matter at hand, Mr. Greene rated Ms. Villoch as "Meets Expectations" and did not allow Mr. Cassone to weigh in on her Performance Evaluation even though Mr. Cassone was her day-to-day manager beginning late July 2021.  Am.Compl. ¶ 32.  Moreover, Mr. Greene's rating of Ms. Villoch's yearly performance resulted in

financial loss.  It can therefore be reasonably concluded that a rating of "Meets Expectations" coupled with a loss in pay or bonus, was materially adverse or, in other words, resulted in creating an environment where the terms, conditions, or benefits of Ms. Villoch's employment was affected.

Moreover, in *Perry v. Maryland*, No. ELH-17-3619, 2019 U.S. Dist. LEXIS 84171, at *38 (D. Md. May 17, 2019) the court stated that "several circuit courts have agreed that a written reprimand, *without collateral consequences,* is not materially adverse. To my knowledge, however, the Fourth Circuit has not expressly addressed the question" (emphasis added).  Thus, it can then be inferred that the converse is true; i.e., that a written reprimand with collateral consequences can be materially adverse.  In the case at hand, Ms. Villoch suffered harm as the one-day suspension was imposed and she spent considerable resources opposing it through the Agency grievance process.  Moreover, during the time it took to grieve the suspension, Ms. Villoch was ineligible to attend external seminars, telework of work with FEMA on surge teams. Am.Compl. ¶ 47.  Thus, although ultimately rescinded, the suspension resulted in collateral consequences that would not have occurred *but for* Mr. Greene's retaliatory actions.

There can be no dispute that the allegations made in the complaint (i.e., Mr. Greene's actions) from September 2021 through the filing of the instant complaint were numerous and there should be no doubt that any reasonable person would be deterred from engaging in protected activity.  Indeed, any employee who was the target of the aforementioned barrage would be justified in their fear of retaliation.

Lastly, contrary to Defendant's arguments, liability for Mr. Greene's retaliatory actions *can* be imputed to Mr. Cassone's decision not to renew Ms. Villoch's detail given the numerous ways Mr. Greene depicted Ms. Villoch as a deceitful and insubordinate employee in an effort to

influence Mr. Cassone. Am.Compl. ¶¶ 26, 33, and 37-38,  In *Staub v. Proctor Hosp.*, 562 U.S. 411, 417, 131 S. Ct. 1186, 179 L. Ed. 2d 144 (2011) the court held that in limited circumstances, discriminatory intent can be imputed to the formal decisionmaker "when that official has no discriminatory animus but is influenced by previous company action that is the product of a like animus someone else,"  (applying this principle to an alleged violation of the Uniformed Services Employment and Reemployment Rights Act, which "very similar to Title VII").  While the court in *Staub* did not make a categorical rule that liability could always be imputed under these circumstances, it did go on to say that a necessary element to a subordinate bias claim is the decisionmaker's uncritical reliance on facts provided by a biased supervisor.  *Id*. at 1191. Likewise, Mr. Greene's refusal to provide a reference undoubtedly placed Ms. Villoch in an unfavorable light.  Mr. Greene's actions were intentional and were done in an effort to harm Ms. Villoch.

Accordingly, Ms. Villoch has sufficiently asserted in her Amended Complaint that Mr. Greene's actions were materially adverse and plead sufficient facts to establish that liability can be imputed to the decision-makers.  Most importantly, however, at this stage of litigation, the matter should not be dismissed but should instead be allowed to continue to discovery. Discovery will allow the parties to uncover information that is essential to Ms. Villoch's case given that she is the Plaintiff and would not have access to all of the necessary information and evidence. Thus, dismissal at this stage would be premature.

### B. Mr. Greene Knew of Ms. Villoch's EEO Activity and Retaliated Against Her Within Two Months of the Protected Activity

In its motion, Defendant argues that no plausible nexus exists between Plaintiff's protected activity and the alleged conduct because first, Mr. Greene may not have had knowledge or was not aware of the ongoing settlement negotiation between Plaintiff and the CISA and

because of a temporal gap.  Def. Mot. Pgs. 10-11.  Defendant's arguments, however, are flawed. In the Amended Complaint, Ms. Villoch stated that she entered into a Settlement Agreement with the Defendant regarding a prior EEOC complaint on July 18, 2021.  Am.Compl. ¶ 10.  Ms. Villoch also stated that the settlement provided for a detail assignment which was explained in a Memorandum of Understanding (herein "MOA").  *Id.* ¶ 11.   Although Mr. Greene was not a signatory to the MOA, he is listed as the point of contact for National Risk Management Center ("NRMC").  *Id.* ¶ 13.  At the time of execution of the MOA, he was the Chief of Administrative Services for NRMC and Ms. Villoch's first-line supervisor and despite the detail, he remained her supervisor of record.  Thus, it is more than plausible, given Mr. Greene's management (and supervisory) position and the need to accommodate Ms. Villoch's detail, i.e., reassign her job duties and responsibilities elsewhere or to someone else, that he had knowledge of her participation in EEO protected activity and of the Settlement Agreement.  Am.Compl. ¶ 15.

Defendant's second point regarding causation focuses on a temporal gap between Ms. Villoch's protected activity and Mr. Greene's actions.  Def. Mot. Pg. 11.  Defendant's argument fails on this point as well.  Proximity in time between the employer's discovery of protected activity and adverse employment action can be sufficient to plead causation so long as the time between the two occurrences is "'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)).

Ms. Villoch entered into the Settlement Agreement on July 14, 2021.  Am.Compl. ¶ 15. Mr. Greene began his retaliatory actions on or about September 10, 2021.  Am.Compl. ¶¶ 21-22. The time between the two events was roughly fifty-eight (58) days or less than two months. Defendant relies on caselaw which suggests that a three-to-four-month gap between protected

activity and retaliatory conduct could be too large to establish causation.  Def. Mot. Pg. 11.

However, in the case at hand, less than two months transpired between the execution of the MOA

and the Settlement Agreement and Mr. Greene's retaliatory conduct.  Accordingly, the closeness

in time renders a plausible inference of retaliation.

In conclusion, Ms. Villoch has sufficiently pled the facts of her retaliation case and

therefore, Plaintiff respectfully requests Defendant's Motion to Dismiss be denied.


Dated: September 25, 2023                    Respectfully submitted,


                                             _____/s/_____
                                             Rosanna C. Lopez, Esquire
                                             Virginia State Bar No. 70547
                                             Lopez & Wu, PLLC
                                             1818 Library Street, Suite 500
                                             Reston, VA 20190
                                             (703) 835-6145 (telephone)
                                             (703) 831-0181 (facsimile)
                                             *Attorney for Deborah Villoch*


## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of September, 2023, I caused a true and correct copy

of the foregoing Opposition to Defendant's Motion to Dismiss to be served electronically, via the

CM-ECF system, to:

HUGHAM CHAN/KIRSTIN O'CONNOR
Assistant United States Attorneys
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3738/3743
Fax: (703) 299-3983
Email:
Hugham.Chan@usdoj.gov

kirstin.o'connor@usdoj.gov
*Counsel for Defenda*nt

_____
/s/
Rosanna Lopez, Esquire